UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| FABIAN KENNEDY<br><br>VERSUS<br><br>MAGNOLIA MARINE TRANSPORTS COMPANY | CIVIL ACTION<br>NO.  15-1813<br>SECTION: 1<br>MAGISTRATE: 5 |

**MAGNOLIA MARINE TRANSPORT COMPANY'S MEMORANDUM IN SUPPORT OF ITS MOTION IN LIMINE TO EXCLUDE TESTIMONY OR EVIDENCE OF A PILOT'S EARNINGS**

Defendant Magnolia Marine Transport Co. ("Magnolia Marine") files this Memorandum in Support of its Motion in Limine to exclude any testimony or evidence regarding the earnings of a Pilot employed by Magnolia Marine. Plaintiff was a Mate at the time of his accident. There is no evidence that he would ever have been a Pilot. Any testimony to the contrary is irrelevant, and in any event, would mislead the jury, unfairly prejudice Magnolia Marine, confuse the issues, and waste time. Plaintiff has produced two expert economic reports authored by Dr. Randolph Rice. It is undisputed that Plaintiff was a Mate on the day of his injury. However, in Dr. Rice's "addendum" to his original report, he calculates Plaintiff's alleged lost wages as if Plaintiff was a Pilot. As shown below, this technique is unsupported by the facts of this case, and thus is improper and should be excluded at trial of the above captioned litigation.

**ANALYSIS**

The reason Plaintiff hopes to use a Pilot's earning as his earnings base and not a Mate's is obvious- it dramatically increases the amount of alleged future lost earnings Plaintiff will ask the jury for at trial. Specifically, Dr. Rice's original report states that future economic loss damages

1

total $1,838,933.[1] However, in the addendum, these same damages soar to $3,412,178.[2] **This is leap of 185%.** Plaintiff's motive for introducing such figures is clear. However, it is improper and speculative for the following reasons.

### FACTS

On the day Plaintiff was injured, he was a Mate on the M/V LINDA TAYLOR.[3] In his last full calendar year of earnings before his accident (2013), both parties agree that he earned $71,340.[4] This is the earnings base used in both Plaintiff's original economic report and also Defendant's economic loss report.[5]

Plaintiff's likely argument to support his Pilot's wage loss claim, despite the fact that he has never been a Pilot, is that he "wanted" to become one. Plaintiff will point to a Letter of Recommendation authored when he was promoted from Relief Mate to Mate.[6] At the bottom of the letter in the comments section is a single statement that reads "***Wants*** to be a pilot." Plaintiff will also explain that <u>after</u> his accident, while sitting in the hospital, he "discussed" the possibility of entering a pilots training program within the company.[7] This conversation took place between the Plaintiff and the President of Magnolia Marine Transport Company, Stan Humphreys and it occurred while Magnolia Marine was brainstorming ways to keep Plaintiff employed at the company. Humphreys later explicitly testified that just because someone enters

---

[1] Please see the original report of Randolph Rice, attached as Exhibit "A."

[2] Please see the "addendum" to Rice's Report, attached as Exhibit "B."

[3] See Plaintiff's deposition testimony, attached as Exhibit "C."

[4] Exhibit "A," p. 1 and Defendant's economic loss report, attached as Exhibit "D," p. 1.

[5] *Id.*

[6] See Letter of Recommendation, attached as Exhibit "E."

[7] See Deposition of Stan Humphreys, attached as Exhibit "F," p. 10, ln 4-10.

to the pilot training program does not mean he will become a pilot.[8] In fact, during the deposition

of Roger Harris, Magnolia Marine's President of Marine Operations, Harris testified that only <u>16</u>

<u>percent</u> of pilot trainees actually make it to pilot.[9] Thus, even <u>if</u> Plaintiff had entered the training

program, which is speculative, there was a **84% chance Plaintiff would <u>not</u> graduate from the**

**training program to become a pilot.** As explained below, his attempt to be compensated like a

Pilot is improperly based on pure speculation.

**LAW**

The recent trend among plaintiffs to argue for wage loss damages assuming some future,

speculative job they do not have nor have ever had is prohibited by binding Fifth Circuit

precedent. This issue was addressed as recently as 2012 in *Martinez v. Offshore Specialty*

*Fabricators, Inc*. 481 Fed. Appx. 942 (5th Cir. 2012). There, the Fifth Circuit Court of Appeals

addressed the proper standard for calculating damages for lost future earnings under maritime

law. The plaintiff, Ramiro Martinez, was a seaman injured in May 2008 while working as a

mechanic aboard a derrick barge.  Martinez sued his employer asserting Jones Act and general

maritime law claims, including loss of future earnings. The evidence at trial was that plaintiff

earned approximately $48,000 in the year before his injury, although his income for the five

years preceding the accident averaged only $5,673.60 per annum.

The employer was held liable at trial and the district court used $48,315 as the annual

income base to calculate Martinez's lost wages. On appeal, the Fifth Circuit rejected the

employer's argument that the average of the seaman's wages over his entire work history, or

some other period, should form the basis of the wage rate, reasoning that its approach most

---

[8] *Id*. at 21, ln 20-p. 22, ln 15

[9] Roger Harris' Deposition, attached as Exhibit "G," p. 36, ln 14-p. 37, ln 13.

3

closely resembled the principles set forth in *Culver v. Slater Boat Co.*, 722 F.2d 114, 120 (5th Cir. 1983)(en banc). Sometimes this rule favors the Plaintiff (like in *Martinez*) and sometimes it favors the Defendant.

In *Culver*, the Fifth Circuit established that "[c]alculation of lost income begins with the gross earnings of the injured party **at the time of the injury** . . . ." *Id*. at 117. (emphasis added). The court went on to detail the steps of the proper calculation: (1) estimating the loss of work life resulting from the injury or death, (2) calculating the lost income stream, (3) computing the total damage, and (4) discounting that amount to its present value. In *Culver*, the Court explicitly states that it was "adopt[ing] a single method for adjusting future damage awards." *Id*. at 123. Even Plaintiff's own expert is aware of this law as his original report **actually cites to this decision!**[10]

Both *Culver* and *Martinez* are good, binding law. To allow Plaintiff to argue to the jury that a possibility of becoming a pilot with only a 16% likelihood entitles him to an increase of **185%** in economic damage flies in the face of both of these decisions. The Fifth Circuit has unambiguously held multiple times that lost earnings are based on the Plaintiff's earnings *at the time of the injury*. This case presents no special circumstances to justify deviation from this well established rule. Certainly a mere 16% chance of becoming a pilot is not enough.

In case Plaintiff argues that he should be permitted to deviate from the well-established rule of *Culver* and *Martinez*, Magnolia Marine notes that there is nothing to justify such a deviation. To do so requires that a Plaintiff like Kennedy have taken "concrete steps" towards becoming a Pilot. For example, in *Gilmore v. Wwl-Tv, Inc.*, a New Orleans Saints' "Saintsation" sought economic damages based on the earnings of a New York City ballerina. 2002 U.S. Dist.

---

[10] Exhibit "A," p. 2.

LEXIS 24026 (E.D. La. Dec. 12, 2002). She argued that becoming such a dancer was a lifelong

dream and that the accident forming the basis of the litigation prevented her from achieving this

dream. In rejecting plaintiff's argument, Judge Englehardt held that "The party offering expert

testimony bears the burden of establishing its reliability by a preponderance of the evidence." *Id*.

at \*8.

> **[P]ossibility alone cannot serve as the basis of recovery**. While certainty of proof is not required in civil cases, **probability is, and less than that is unacceptably speculative**. The questioned projection would only foster jury confusion, waste trial time, and call for a verdict which is simply not in the universe of rational awards based on the evidence of the plaintiff's work history.

 *Id*. at \*9 (emphasis added).

The plaintiff in *Gilmore* sought to introduce expert testimony that she would become a

ballerina in New York City and earn a salary as one until the age of 70. However "the evidence

disclosed to the Court … provide[d] no reasonable basis for a loss of future earnings award based

on the an assumption that Ms. Gilmore would in fact become a professional dancer in New York

and earn a salary doing so until age 70." *Id*. at \*10. Because "**a plaintiff must present evidence**

**(more than a simple assumption) that proves that a loss of earning capacity has, in fact,**

**been sustained**," the expert testimony was excluded. *Id*. at \*13 (emphasis added). "A paramount

concern in reparations for loss of future income is to provide the victim with a sum of money that

will, in fact, replace the money the plaintiff could have earned." *Id*. at \* 18.

Perhaps most helpful is Judge Englehardt's explanation as to why the proposed expert

testimony was unreliable/inadmissible:

> There is no suggestion or innuendo that the plaintiff was ever swayed by any offer to actually go to New York in pursuit of such a career, or **took any concrete steps** toward picking up roots and transplanting herself in the dance venue of New York City. There is no evidence that suggests that the plaintiff was ever compensated with a salary for either performing ballet/ dance or

teaching ballet/ dance except for her experience working seasonally as a Saintsation. **No matter how sincere, such aspiration alone does not provide a sufficient factual basis to support an expert opinion regarding money to be earned in such a speculative future.**

*Id*. at \*16-17. *Gilmore* is directly on point with the facts of this case. Here, it is not in dispute that Plaintiff was allegedly injured while employed as a Mate, not a Pilot. Most importantly, there is absolutely no evidence that Plaintiff took any "concrete steps" towards becoming a Pilot. His aspirations alone are not enough. Here, Kennedy's chance at becoming a Pilot is barely even a "*possibility*," much less a "*probability*" as required by *Gilmore*. Allowing Plaintiff to present evidence of a Pilot's pay will "only foster jury confusion, waste trial time, and call for a verdict which is simply not in the universe of rational awards based on the evidence of the plaintiff's work history."

*Gilmore* was recently cited by Magistrate Judge North in a case where a rigger sought to be compensated like an engineer.[11] There, the rigger sought via discovery requests documentation on an engineer's pay. The requests were objected to and a Motion to Compel was filed with Judge North. In denying the Motion to Compel, Judge North noted that the information sought was not relevant because the Plaintiff had nothing more than a Letter of Recommendation to support his claim for damages based on an engineer's earnings. At least for the plaintiff there, his Letter of Recommendation stated more than that he simply "wanted" to be an engineer. Instead, the Letter read-

> To whom it may concern;
>
> As Master of the HOS Cornerstone it has been my pleasure to allow Mr. Michael Walker to accompany my Chief Engineer and his staff to the Engine Room for some training. Mike has expressed

---

[11] *See* Magistrate Judge North's Order and Reasons from 2:15-cv-00645*, Rec. Doc. 54*, attached as Exhibit "H."

an interest in becoming a QMED and of course has designs to continue training beyond and one day be an Engineer. He has been trained in watch standing as required for an OIERW. He has in the company of qualified members of the Engine Room observed how to do Day Tank Fuel Oil Transfers, Gauge reading as required, and generally assist as needed in other routine tasks. Mike has shown and continues to show the interest, has a clear head on his shoulders and asks the right questions. I would be pleased as would my Engineering Staff to consider Mike sound of body and mind and the right kind of character to pursue his desired technical career. Please feel free to call me on the vessel or email me for further recommendations or answers to any questions about his ability or resolve.[12]

In denying the plaintiff's Motion to Compel, Magistrate Judge North stated that despite the above Letter of Recommendation, "expressing an interest, harboring an ambition, having designs to obtain training or being of sound body and mind" will, without more, "never be sufficient evidence to prove a claim for loss of earnings capacity" for a position other than the one which the plaintiff held at the time of the accident.[13] Such aspirations do not equate to the "concrete steps" required to justify deviation from the well-established rule of *Culver* and *Martinez*. Judge North also recognized the practical point that allowing such rankly speculative evidence (likely to the point of irrelevance) to come in through discovery would infect the entire preceding by allowing that evidence to creep into the valuation of that matter.[14] *See also*, e.g., *Goode v. Herman Miller*, 811 F.2d 866, 871 (5th Cir.1988) (holding under Louisiana law, that mere proof that something is possible is of little probative value as to an ultimate issue of fact, unless it can be established with reasonable certainty that all other alternatives are impossible); *Gideon v. Johns– Manville Sales Corp.*, 761 F.2d 1129, 1137 (5th Cir.1985) (possibility alone

---

[12] *Id*. at p. 3-4.

[13] *Id*. at p. 8-9.

[14] *Id*. at p. 10-11.

cannot serve as the basis for recovery, for mere possibility does not meet the preponderance of the evidence standard).

Here, Plaintiff has nothing more than a Letter of Recommendation, which is likely inadmissible hearsay, stating that he "wants" to be a Pilot and a few lines of deposition testimony that state that possible entry into the pilot's training program was "discussed" <u>after</u> his accident. The undisputed evidence proves that even entry into the program, which never occurred for Plaintiff, does not make it *probable* that he would have become a Pilot. To be clear, Plaintiff was never enrolled in this program before or after his accident. Even if he had been, the likelihood of him becoming a Pilot was a mere 16%. It would have been <u>much</u> more probable that he would <u>not</u> have become a Pilot. At the time of his accident, Plaintiff was a Mate, not a Pilot. A possibility of becoming a Mate is not enough. A probability is required.

The case law is clear that an "aspiration," without concrete steps taken to make fulfillment of that aspiration "**probable**," is not enough to calculate lost earnings using anything other than Plaintiff's wages at the time of the accident. Here, Plaintiff has absolutely no evidence that it was probable that he would become a Pilot. Instead, the evidence is overwhelmingly to the contrary. As such, both *Culver* and *Martinez* mandate that his earnings base should be that of a Mate. Any other calculation would improperly be based on rank speculation.

/s/ Stephen H. Clement
JEFFERSON R. TILLERY (#17831)
C. BARRETT RICE (#30034)
STEPHEN H. CLEMENT (#34850)
Jones Walker LLP
201 St. Charles Ave., 50th Floor
New Orleans, LA 70170-5100
Telephone:     (504) 582-8000
Facsimile:      (504) 589-8583
E-Mail:          jtillery@joneswalker.com
                     brice@joneswalker.com
                     sclement@joneswalker.com

*Attorneys for Defendant, Magnolia Marine
Transport Co.*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been forwarded to all counsel of record by hand, fax, electronic filing, or by depositing same in the U.S. mail, postage prepaid and properly addressed this 5th day of May, 2016.

/s/ Stephen H. Clement