UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FABIAN KENNEDY** | **CIVIL ACTION** |
| **VERSUS** | **No. 15-1813** |
| **MAGNOLIA MARINE TRANSPORT COMPANY** | **SECTION I** |

## AMENDED ORDER AND REASONS

Before the Court are several motions *in limine* as well as other pretrial issues that were briefed in accordance with this Court's April 29, 2016 minute entry.[1] Specifically, plaintiff has filed a motion[2] *in limine* challenging the admissibility of certain expert testimony. Defendant has filed a motion[3] *in limine* to exclude expert testimony of plaintiff's proposed safety experts which testimony is allegedly duplicative, as well as a motion[4] *in limine* to exclude testimony and evidence regarding the earnings of a pilot.

Both parties have also filed briefs[5] addressing whether defendant should be permitted to argue any issues relating to defendant's maintenance and cure obligations at trial as plaintiff is not pursuing a claim for maintenance and cure and defendant has paid all maintenance and cure owed

---

[1] R. Doc. No. 54.
[2] R. Doc. No. 55.
[3] R. Doc. No. 56.
[4] R. Doc. No. 57.
[5] R. Doc. Nos. 61, 71.

plaintiff to date."[6] Plaintiff has also filed a brief[7] addressing whether he should be permitted to argue entitlement to financial management damages at trial.[8]

The Court addresses each of these motions and pretrial issues in turn.

## STANDARD OF LAW

The following standard of law is applicable to the motions *in limine* challenging the admissibility of certain expert testimony:

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert witness testimony. Fed. R. Evid. 702; *see Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588 (1993); *United States v. Hitt*, 473 F.3d 146, 148 (5th Cir. 2006). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

"To qualify as an expert, 'the witness must have such knowledge or experience in [his] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth.'" *United States v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004) (quoting *United States*

---

[6] R. Doc. No. 54, at 2. Plaintiff has also filed a motion to strike his maintenance and cure claims without prejudice. R. Doc. No. 72. The motion implicates the same issues as the memorandums.
[7] R. Doc. No. 60.
[8] The Court's April 29, 2016 minute entry directed that this brief be supported "by appropriate legal authority justifying recovery of this category of damages in a Jones Act and general maritime case." R. Doc. No. 54, at 3.

*v. Bourgeois*, 950 F.2d 980, 987 (5th Cir. 1992)).  Additionally, Rule 702 explains an expert may be qualified based on "knowledge, skill, experience, training, or education." *Hicks,* 389 F.3d at 524; *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (discussing witnesses whose expertise is based purely on experience).  "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009) (quoting *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999)).  However, "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue.  Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Id.*; *see Daubert,* 509 U.S. at 596.

*Daubert* "provides the analytical framework for determining whether expert testimony is admissible under Rule 702." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002).  Both scientific and nonscientific expert testimony is subject to the *Daubert* framework, which requires trial courts to make a preliminary assessment to "determine whether the expert testimony is both reliable and relevant." *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004); *see Kumho Tire*, 526 U.S. at 147.

A number of nonexclusive factors may be relevant to the reliability inquiry, including: (1) whether the technique has been tested, (2) whether the technique has been subjected to peer review and publication, (3) the potential error rate, (4) the existence and maintenance of standards controlling the technique's operation, and (5) whether the technique is generally accepted in the relevant scientific community.  *Burleson*, 393 F.3d at 584.  The reliability inquiry must remain flexible, however, as "not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." *Guy v. Crown Equip. Corp.*, 394 F.3d

320, 325 (5th Cir. 2004); *see Runnels v. Tex. Children's Hosp. Select Plan*, 167 F. App'x 377, 381 (5th Cir. 2006) ("[A] trial judge has 'considerable leeway' in determining 'how to test an expert's reliability.'"). "Both the determination of reliability itself and the factors taken into account are left to the discretion of the district court consistent with its gatekeeping function under [Rule] 702." *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000).

With respect to determining the relevancy of an expert's testimony pursuant to Rule 702 and *Daubert*, the proposed testimony must be relevant "not simply in the way all testimony must be relevant [pursuant to Rule 402], but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Bocanegra v. Vicmar Servs., Inc.,* 320 F.3d 581, 584 (5th Cir. 2003). "There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." *Vogler v. Blackmore*, 352 F.3d 150, 156 n.5 (5th Cir. 2003) (quoting Fed. R. Evid. 702 advisory committee's note).

The Court finally notes that when expert testimony is challenged under Rule 702 and *Daubert*, the burden of proof rests with the party seeking to present the testimony. *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

## ANALYSIS

**I.    Plaintiff's motion *in limine* to exclude expert testimony**

As an initial matter, the Court observes that this motion is technically untimely. The Court's scheduling order[9] imposed a motion submission deadline of April 6, 2016 for motions

---

[9] R. Doc. No. 44.

4

challenging the admissibility of expert testimony, and plaintiff's motion was filed on May 4, 2016. Nevertheless, because plaintiff provides a satisfactory excuse for his tardiness, the Court will consider it. For the following reasons, however, the motion is denied.

Plaintiff moves to exclude certain anticipated testimony of defendant's medical expert, Dr. Meredith Warner. Specifically, plaintiff requests that the following be excluded: (1) Dr. Warner's representation that the purpose of her evaluation of plaintiff was to form an "independent assessment" of his medical complaints;[10] (2) Dr. Warner's opinions that plaintiff "should return to his work as [it] is reliably therapeutic" and that "[a]ssuming the varus position of the foot is addressed and the lateral pain from the nerve is treated, [plaintiff] should be able to maintain balance;"[11] (3) Dr. Warner's opinion that the medical life care plan recommended by plaintiff's expert is unnecessary;[12] and (4) Dr. Warner's opinion that plaintiff "has a good chance at living a wonderful and positive life."[13]

Plaintiff argues that Dr. Warner representing herself as "independent" is misleading because she was hired by defendant. He argues that Dr. Warner's opinions regarding plaintiff's ability to balance, plaintiff's ability to return to work, and the necessity of plaintiff's proposed life care plan are improper because Dr. Warner is a medical doctor, not a vocational rehabilitation expert. As for Dr. Warner's final opinion that plaintiff has a good chance at a positive life, plaintiff asserts that such an opinion is based on "philosophical views" and not on Dr. Warner's "medical background." None of these arguments warrant excluding Dr. Warner's proposed testimony.

---

[10] R. Doc. No. 55-2, at 6.
[11] R. Doc. No. 55-2, at 19.
[12] R. Doc. No. 55-2, at 19-20.
[13] R. Doc. No. 55-2, at 20.

First, it is not unfair for Dr. Warner to testify that she was hired to perform an "independent assessment" of plaintiff's medical condition. As defendant points out in its opposition, courts frequently refer to the examinations conducted by a defendant's medical doctors as "independent medical examinations." *See, e.g.*, *Bergeron v. ReliaStar Life Ins. Co.*, No. 13-6128, 2015 WL 225229, at *8 (E.D. La. Jan. 15, 2015) (Fallon, J.); *Harrison v. Diamond Offshore Drilling, Inc.*, No. 07-417, 2008 WL 708076, at *12 (E.D. La. Mar. 6, 2008) (Vance, J.). Indeed, Rule 35(a) of the Federal Rules of Civil Procedure allows the Court to order an "independent medical exam"—which typically means an exam by a defendant's expert—when a plaintiff's mental or physical condition is in controversy. The terms "independent exam" or "independent assessment," in this context, suggest only that the examination was performed by someone other than the plaintiff's treating physician. To the extent plaintiff wants the jury to know that Dr. Warner was hired by defendant, cross examination will ensure that it does.

Second, Dr. Warner may render her opinion that plaintiff should be able to return to work, that he should be able to maintain his balance, and that plaintiff's proposed life care plan is therefore medically unnecessary. A medical doctor may testify regarding a plaintiff's vocational prospects, given his medical limitations. *See Baker v. Canadian Nat'l/Illinois Cent. R.R.*, 536 F.3d 357, 365 (5th Cir. 2008) (analyzing whether the plaintiff's treating physician's trial testimony was that the plaintiff could or could not work); *Leggett v. Chater*, 67 F.3d 558, 565 (5th Cir. 1995) ("After reviewing Leggett's history, the medical expert stated that he did not believe that Leggett 'should be sitting in a chair doing nothing' and that he 'can do normal physical activity,' concluding that Leggett is capable of performing sedentary work.").

The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation—including working conditions and the attributes and skills needed—and

that he can compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion regarding whether the claimant can perform a specific job. *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986). Simply because a vocational expert is *useful* in establishing a plaintiff's capacity or lack of capacity to work does not mean, however, that a vocational expert is the only type of expert who can opine on whether a plaintiff is capable of working. *See Cornett v. Astrue*, 261 F. App'x 644, 649 (5th Cir. 2008) ("At least two physicians reported that Cornett's impairments do not preclude him from performing certain types of work; a vocational expert testified to the same effect."); *Dore' v. Movable Platforms, Inc.*, No. 95-1315, 1996 WL 464177, at *2 (E.D. La. Aug. 15, 1996) ("The Court did exclude vocational rehabilitation experts from testifying at trial because their testimony would be cumulative and not assist the jury as the physicians could testify as to plaintiff's future limitations and capacity [to work]."). Dr. Warner may offer her opinions subject to the rules of evidence.

Finally, Dr. Warner may offer her opinion that plaintiff has a good chance at a positive life. When considered in context, it is clear that this opinion is being offered from a medical and not a "philosophical" standpoint. The doctor is simply testifying that, if plaintiff follows Dr. Warner's recommended treatment, there is a probability that he will be able to "function at the level he desires."[14] Cross examination should resolve any ambiguity in this regard.

## II. Defendant's motion *in limine* to exclude expert testimony

Defendant's motion, like plaintiff's motion, is technically untimely. The Court's scheduling order[15] imposed a motion submission deadline of April 6, 2016 for motions challenging the admissibility of expert testimony, and defendant's motion was filed on May 5, 2016.

---

[14] R. Doc. No. 69, at 5.
[15] R. Doc. No. 44.

Nevertheless, because defendant adequately explains that the delay was due to his misconstruing the deadlines set forth in the scheduling order, the Court will consider the motion. For the following reasons, however, the motion is denied.

Defendant's motion seeks to exclude the opinion of plaintiff's proposed safety expert, Bob Borrison, as unduly duplicative of plaintiff's other proposed safety expert, Captain Pat Jamison. According to defendant, both experts offer the exact same opinions: (1) that the steersman improperly brought the two vessels together and (2) that defendant's use of a "two eye mooring line" was a safety hazard. Because Rule 403 of the Federal Rules of Evidence permits a court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . needlessly presenting cumulative evidence," defendant argues that Borrison's opinions should be excluded. In opposition, plaintiff argues that the experts' opinions are based on very different areas of expertise, will be helpful to the jury, and are not cumulative.

This motion is deferred until such time as it is raised by defendant at trial. The Court will be in a better position to evaluate the alleged duplicity at that time.

### III. Defendant's motion *in limine* to exclude testomy and evidence regarding the earnings of a pilot

Defendant argues that any testimony or evidence regarding the earnings of a pilot should be excluded because plaintiff was a mate at the time of the accident and it was not probable that he would ever have become a pilot. Plaintiff argues that becoming a pilot was probable, as he is only 27 years old, had been consistently promoted, had expressed a desire to become a pilot prior to the accident, and had been encouraged by his employer to apply for the pilot program.[16]

---

[16] R. Doc. No. 68, at 4-5. Indeed, plaintiff cites the following excerpts from the deposition of Stan Humphreys, the President of defendant, Magnolia Marine Transport Company ("Magnolia Marine"):

There are genuine issues of material fact as to this issue. While it is true that "possibility alone cannot serve as the basis of recovery," *Gilmore v. WWL-TV, Inc.*, No. 01-3606, 2002 WL 31819135, at *3 (E.D. La. Dec. 12, 2002),[17] the Court is unable to conclude at this stage that plaintiff becoming a pilot was possible but not probable. "It is the jury's responsibility to weigh conflicting evidence, draw inferences from that evidence, and determine the relative credibility of the witnesses." *Thompson v. Amerada Hess Corp.*, No. 96-3265, 1998 WL 274260, at *2 (E.D. La. May 26, 1998). The Court is unwilling, based on the record before it, to exclude such evidence. If presented by a proper motion and objection at trial or post-trial, the Court will consider the same.

---

> Q. All right. Did he ask you any questions at all about what Magnolia Marine was going to do or be willing to do for him in light of his injury?
>
> A. The only thing that was discussed that I remember was the fact that he was to the point in his career with Magnolia Marine that the next step for him would be to be trained as a pilot.
>
> Q. Okay. And did he express an interest in doing that, obviously?
>
> A. Absolutely.
>
> . . .
>
> Q. All right. Tell me about [the pilot program and pilot training program], please.
>
> A. He had reached the level and based on his work record that he would be eligible for our pilot training program. So he could become a pilot and he was interested in that. . . . .

R. Doc. No. 68-3, at 2, 3.

[17] Citing *Gideon v. Johns–Manville Sales Corp.*, 761 F.2d 1129, 1137 (5th Cir. 1985) (possibility alone cannot serve as the basis for recovery, for mere possibility does not meet the preponderance of the evidence standard).

## IV. Maintenance and cure issue

Following the April 29, 2016 pretrial conference, the Court directed defendant to "file a brief articulating why defendant should be permitted to argue any issues relating to defendant's maintenance and cure obligations at trial where plaintiff is not pursuing a claim for maintenance and cure and where defendant has paid all maintenance and cure owed plaintiff to date."[18] Defendant has done so, and plaintiff has responded. Plaintiff has also filed a motion[19] to strike his maintenance and cure claims without prejudice.

Defendant argues in its brief that "[e]vidence of Magnolia Marine's obligation to pay future cure and past cure payments is relevant for the purposes of mitigating Plaintiff's claim for emotional damages as a result of financial concerns and supporting the credibility of Magnolia Marine which will undoubtedly be attacked by Plaintiff at the trial of this matter."[20] It also claims that striking the maintenance and cure issue without prejudice would permit plaintiff to engage in unfair "litigation gamesmanship," whereby he can "keep out evidence harmful to his case while at the same time ensuring that he can mitigate his potential risk by holding his maintenance and cure claim in reserve."[21]

First, to the extent defendant seeks a jury determination regarding plaintiff's right to maintenance and cure, that request is denied. Both parties agree that plaintiff is at maximum medical improvement, that he has received all of the maintenance and cure to which he is entitled as of this date, and that plaintiff is not seeking any additional maintenance and cure benefits at

---

[18] R. Doc. No. 54, at 2.
[19] R. Doc. No. 72.
[20] R. Doc. No. 61, at 1.
[21] R. Doc. No. 61, at 5.

trial. There is accordingly no need for the parties to argue or for the jury to decide any issue related to maintenance and cure. If a dispute regarding defendant's maintenance and cure obligations arises in the future, it will be decided at that time. Plaintiff's motion to strike the maintenance and cure claims without prejudice should be granted.

However, the Court agrees with defendant that its provision of maintenance and cure may be relevant to defending against plaintiff's claim for emotional damages. Plaintiff attempts to undermine defense counsel's argument by summarizing it thus: "Magnolia Marine's argument appears to be that, as it will seemingly agree to pay maintenance and cure in the future, plaintiff should not have any mental anguish about his future finances."[22] But here plaintiff overreaches. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Although plaintiff's entitlement to maintenance and cure may not eliminate his concerns about financial problems, it could certainly lessen those concerns.

Nonetheless, until plaintiff testifies at trial and the Court hears counsels' arguments, it remains unclear whether he (A) has worried in the past about whether his medical and day-to-day expenses would be paid; (B) continues to worry whether his future medical and day-to-day expenses will be paid; or (C) both. While defendant's maintenance and cure obligation may be relevant if such testimony is provided, it does not appear relevant in the absence of such testimony. Furthermore, the Court reserves any decision it may make with respect to the introduction of such testimony as it has not yet considered such evidence under Rule 403 of the Federal Rules of Evidence.

---

[22] R. Doc. No. 71, at 4.

The Court defers until trial its determination regarding the relevance and admissibility of maintenance and cure evidence. The parties shall obtain permission from the Court prior to referencing maintenance and cure. If evidence regarding maintenance and cure is admitted, the Court can cure any potential prejudice to either party with an appropriate instruction to the jury.

**V.     Financial management damages issue**

Plaintiff's vocational rehabilitation expert and Certified Life Care Planner, Dr. Cornelius Gorman, has developed a life care plan for plaintiff that includes $692,500 for financial management. Following the April 29, 2016 pretrial conference, the Court issued an order stating that it "will not permit plaintiff to argue entitlement to financial management damages at trial."[23] It further ordered that "[i]f plaintiff objects to this ruling, he shall brief the issue to the Court."[24] Plaintiff has done so.[25] He argues, in short, that "he is entitled to put on evidence in the form of expert testimony as to whether he will need financial management and why [because], [a]s a practical matter, plaintiff needs financial management assistance if he is awarded a large amount of money."[26]

Plaintiff candidly admits that he cannot locate a single case—much less a Jones Act case—where such damages were awarded. Nevertheless, he places a positive spin on the lack of authority, arguing that he "was unable to find any cases that limit a Jones Act seaman (or any other plaintiff) from such an award."[27] In the Court's view, however, the dearth of cases awarding financial management damages cannot be construed in plaintiff's favor.

---

[23] R. Doc. No. 54, at 2.
[24] R. Doc. No. 54, at 2.
[25] R. Doc. No. 60. The Court ordered defendant to file a response by Wednesday, May 18, 2016, at 12:00 PM, but ultimately concludes that one is not necessary to reject plaintiff's claim.
[26] R. Doc. No. 60, at 2.
[27] R. Doc. No. 60, at 1-2.

Even as a matter of first impression, it is clear that such damages are not permitted in this case. This is not a case in which plaintiff lacks the mental capacity to manage his funds or a case in which the accident diminished plaintiff's mental capacity to manage his funds. Plaintiff may be compensated for medical expenses, for loss of earning capacity, for pain and suffering, and for other damages that defendant caused. Even if the need for financial management can be considered as "damages," a finding this Court does not make, plaintiff cannot be compensated for damages not caused by defendant's conduct. The Court's order regarding financial management stands and plaintiff's claim for such damages should be dismissed.

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that plaintiff's motion *in limine* to exclude expert testimony is **DENIED**.

**IT IS FURTHER ORDERED** that defendant's motion in limine to exclude expert testimony as cumulative is **DEFERRED UNTIL TRIAL**.

**IT IS FURTHER ORDERED** that defendant's motion to exclude testimony and evidence regarding the earnings of a pilot is **DENIED WITHOUT PREJUDICE** to defendant's right to re-urge such arguments with an appropriate objection or motion at trial or post-trial.

**IT IS FURTHER ORDERED** that plaintiff's motion to strike his maintenance and cure claims without prejudice is **GRANTED** and that such claims are **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that the admissibility of evidence pertaining to maintenance and cure is **DEFERRED UNTIL TRIAL**. No party shall reference maintenance and cure without first obtaining the Court's permission.

**IT IS FURTHER ORDERED** that plaintiff's claim for financial management damages is **DISMISSED WITH PREJUDICE**.  Such damages shall not be referenced at trial.

New Orleans, Louisiana, May 18, 2016.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**